******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LASCELLES A. CLUE *v.* COMMISSIONER
## OF CORRECTION
## (AC 45984)

Bright, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The petitioner appealed to this court from the judgment of the habeas court
denying his untimely motion to open and set aside the court's dismissal
of his petition for habeas corpus. The petitioner was represented by
assigned counsel, W, in his underlying habeas petition, filed in February,
2018. The petitioner was deported to Jamaica in June, 2020. Following
the petitioner's deportation, the trial court granted W's caseflow request
for a video status conference, in which W represented that his attempts
to contact the petitioner had been unsuccessful. At the status conference,
the court asked W to file a notice with the court detailing his efforts to
communicate with the petitioner and his family. W filed the notice, in
which he alleged that there had been a breakdown in his communications
with the petitioner, that his efforts to contact the petitioner or members
of the petitioner's family had been unsuccessful and that the case could
not proceed without the petitioner. The court thereafter issued an order
that the matter would be scheduled for a hearing on the court's own
motion to dismiss the petition due to the petitioner's failure to contact
and cooperate with W in prosecuting the petition with due diligence
and provided notice that the matter could be dismissed for failure to
appear if the petitioner did not appear for the scheduled hearing. The
court dismissed the underlying habeas petition at a hearing held in
February, 2021, at which the petitioner did not appear. The petitioner
filed a motion to open the judgment of dismissal in May, 2022, alleging,
inter alia, that W had failed to communicate effectively with him and
had made material representations about his exercise of due diligence
in locating the petitioner. The court denied the petitioner's motion to
open on the basis that the petitioner had failed to establish a recognized
basis to open the judgment beyond the four month period established
by statute (§ 52-212a), and it declined to resolve factual disputes or
make credibility determinations because there was no threshold showing
of fraud, duress or mutual mistake. *Held*:

1. The habeas court improperly limited the scope of its authority to grant
the petitioner's motion to open to a showing that the judgment was
obtained by fraud, duress or mistake; the court's authority to grant a
late motion to open a judgment was not exclusively limited to those
three recognized exceptions, as both this court and our Supreme Court
have recognized other equitable exceptions to the four month time
limitation in § 52-212a in situations in which the protection of the finality
of judgments must give way to principles of fairness and equity.

2. As an issue of first impression, this court held that, given both the signifi-
cant liberty interests at stake in habeas proceedings and the importance
of the right to counsel in such proceedings, the ineffective assistance
of habeas counsel under *Strickland* v. *Washington* (466 U.S. 668) is
sufficient to invoke the habeas court's common-law authority to open
a habeas judgment more than four months after it was rendered: barring
a petitioner relief from a judgment that was rendered or not timely
opened due to the ineffective assistance of habeas counsel on the sole
basis that the statutory period had expired would undermine the funda-
mental fairness origins underlying the common-law writ of habeas cor-
pus and the very nature of the right to habeas counsel provided by
statute (§ 51-296 (a)), and an equitable exception to the four month
limitation period is warranted to avoid perpetuating the injustice of a
judgment that was rendered or not timely opened due to the constitution-
ally deficient performance of habeas counsel; moreover, as our Supreme
Court recently held in *Rose* v. *Commissioner of Correction* (348 Conn.
333), ineffective assistance of counsel may constitute good cause to
excuse the late filing of a habeas petition pursuant to statute (§ 52-470),
and this court held that the same reasoning applied to a late motion to
open based on a claim of ineffective assistance of habeas counsel;

furthermore, this court declined to speculate as to how the habeas court, which explicitly stated in its memorandum of decision that it was not resolving factual disputes or making credibility determinations, would have resolved key factual issues and how it would have exercised its discretion had it not been operating under an unnecessarily limited view of its authority; accordingly, the case was remanded for a new hearing on the petitioner's motion to open.

Argued October 10, 2023—officially released February 20, 2024

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Oliver, J.*, rendered judgment dismissing the petition; thereafter, the court, *Oliver, J.*, denied the petitioner's motion to open the judgment, and the petitioner, on the granting of certification to appeal, appealed to this court. *Reversed*; *further proceedings*.

*James E. Mortimer*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, were *David Applegate*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BRIGHT, C. J. In this certified appeal, the petitioner, Lascelles A. Clue, appeals from the judgment of the habeas court denying his untimely motion to open and set aside the 2021 dismissal of his habeas petition. On appeal, the petitioner claims that the court improperly concluded that its equitable authority to open the judgment outside of the four month period set forth in General Statutes § 52-212a was limited to cases in which the judgment was obtained by fraud, duress, or mutual mistake. We agree and conclude that, in the context of a habeas corpus case, the court has the authority to consider an otherwise untimely motion to open that is based on the ineffective assistance of habeas counsel.[1] Accordingly, we reverse the judgment of the habeas court and remand the case for a new hearing on the petitioner's motion to open.

The following facts, as set forth by the court in its memorandum of decision or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. The petitioner filed the underlying habeas petition on February 20, 2018, challenging, on the basis of the alleged ineffective assistance of his trial attorneys, a conviction that resulted from a 2011 guilty plea. The petitioner requested that counsel be appointed to represent him in the habeas action, and the Law Office of Christopher Duby, LLC (Duby law firm), was appointed as his counsel. Subsequently, Attorney Patick White, an associate in the firm, filed an appearance with the court as the petitioner's counsel. White represented the petitioner at all relevant times. The court entered a scheduling order on April 5, 2019, which established trial dates for March 30 and 31, 2022. In June, 2020, the petitioner was deported to Jamaica. Prior to being deported, the petitioner successfully obtained relief in another habeas case[2] challenging a different conviction.[3] The petitioner was represented by Attorney Daniel Lage in that habeas case.

On January 14, 2021, White filed a caseflow request for a video status conference. In that request, White represented that the petitioner had been deported and that White's attempts to contact the petitioner, his mother, and his wife had been unsuccessful. The court, *Oliver, J.*, granted White's request and held a status conference on January 25, 2021, during which the court requested that White file a notice with the court detailing his efforts to communicate with the petitioner and his family. Accordingly, "[o]n January 27, 2021, White filed a notice that there had been a breakdown in communications between him and [the petitioner]. The notice detailed the history of White's interactions with [the petitioner] until his deportation and the efforts thereafter to contact [the petitioner] and his family. White represented that all his efforts to contact [the petitioner], as well as his mother and wife, had been

unsuccessful. The notice concluded with the assertion that the case could not proceed without [the petitioner].[4]

"The court issued an order on January 27, 2021, that the matter would be scheduled for a hearing on the court's own motion to dismiss based on [the petitioner's] failure to contact and cooperate with White in prosecuting the instant petition with due diligence. The court also provided notice that the matter may also be dismissed for failure to appear if [the petitioner] absented himself from the upcoming hearing.[5] After a hearing on February 11, 2021, and upon consideration of the previously filed notice as supplemented by White's representations at the hearing, the court dismissed the petition based on [the petitioner's] failure to appear and prosecute the petition with due diligence." (Footnotes added.)

On May 19, 2022, the petitioner filed a motion to open the judgment of dismissal and a supporting memorandum of law. The petitioner claimed: "[H]e did not receive the notices of White's caseflow request and the ensuing hearing; he did not waive his right to be present at the dismissal hearing; White failed to make reasonable efforts to apprise him of the status of the matter; and White failed to communicate effectively with him, his family contacts, or attorneys who represent him in other cases. . . . [The petitioner ascribed] various failures to White and [asserted] that [White] made material misrepresentations about his exercise of due diligence in locating the petitioner. Those material misrepresentations, which the [petitioner described] as conduct designed to result in the dismissal of the petition absent [the petitioner's] knowledge or consent, resulted in the court dismissing the case.

"The respondent, [the Commissioner of Correction, objected] to the motion to open because it [was] untimely, [the petitioner] failed to keep White apprised of his whereabouts and contact information, and [the petitioner] did not act with diligence in seeking to open the judgment. The respondent . . . also submitted an affidavit from White which detail[ed] his efforts to communicate with [the petitioner] and his family members after his deportation.

"The parties appeared at a hearing on June 17 and July 8, 2022, where [the court] heard testimony from [the petitioner], White, Lage, Fay Ellis (the petitioner's mother), and Kelly Clue (the petitioner's wife). Additionally, [the petitioner] entered several exhibits into evidence," including three letters from the Duby law firm to the petitioner dated June 26, 2018, February 3, 2020, and February 26, 2020; a contact information sheet that the Duby law firm gave to the petitioner, on which the petitioner provided the firm with his wife's and mother's phone numbers; and the transcript of the dismissal hearing.

On the basis of the testimony at the hearing, the habeas court set forth the following additional facts in its September 12, 2022 memorandum of decision. "[The petitioner] was at a federal detention center for approximately three months prior to his deportation. [The petitioner] and White corresponded with each other and spoke once while [the petitioner] was at the federal detention center. White knew that [the petitioner] would be deported." Accordingly, "White told [the petitioner] that if he were deported, then he would need to provide contact information and instructed [the petitioner] to contact him."

Following the petitioner's deportation, "[b]ecause [White] did not have any contact information for [the petitioner] in Jamaica, [he] tried calling Kelly Clue and Ellis, who were listed on the contact sheet provided by [the petitioner], but he did not write to them. White did not have any specific independent recollection of leaving messages for Kelly Clue and Ellis, but it is his practice to leave such messages. White did not receive any calls back." Ellis testified, however, "that she has never been contacted by White, whether pre or postdeportation." Similarly, Kelly Clue testified that she has never had any contact with White or his law firm.

The petitioner testified that "he had White's phone number in an address book [and] tried calling White two or three times after he was deported, once in August of 2020 and twice in October of 2020 [and that he] left voicemail messages, which included his cell phone number, on White's extension but did not receive any calls back. [The petitioner] did not try to contact White again after October of 2020, because he has paranoia, [post-traumatic stress disorder], and gave up because he thought White gave up. . . . In early 2021, [the petitioner's] cell phone was disconnected, and he obtained the number that he presently has. [The petitioner] did not provide his new number to the Duby law firm." By contrast, Ellis testified that she has "had daily contact [with the petitioner] via phone calls" since his deportation, and "she has had contact with him via . . . video calls, emails, and text messages." Kelly Clue also "had contact with [the petitioner] via phone calls and emails beginning a few days after his deportation." Moreover, the petitioner spoke with Lage, the attorney representing him in his other habeas proceeding, "numerous times between the summer of 2020 and spring of 2022."

The court stated that the petitioner "had no notice of the January 27, 2021 scheduling order that there would be a hearing on the court's own motion to dismiss based on [the petitioner's] failure to prosecute this case with due diligence, as well as that the matter might be dismissed if [he] failed to appear. In either January or February of 2022, [the petitioner] found out about the dismissal from Kelly Clue, who was checking on the case status before the originally scheduled trial date.

. . . Although [the petitioner] was unable to access the Judicial Branch's website from Jamaica, he was able to look up information for the Office of the Chief Public Defender (OCPD) and seek assistance in opening this case. [The petitioner] contacted OCPD about one month after he found out that this case had been dismissed. [The petitioner] searched for White [on the Internet], never asked Lage to contact White, did not write a letter to White, and did not complain to OCPD about White even though he had given up on White."

At the hearing, the petitioner argued that the facts of this case warranted "a quasi-fraud equitable exception to the 120 day rule . . . predicated . . . on ineffective assistance of counsel or attorney negligence." In particular, the petitioner claimed that White "failed to communicate with the petitioner" about the status of his case; failed to "exercise reasonable diligence in contacting the petitioner"; "failed to notify him of the filing of [the] notice [to the court] . . . the status conference . . . and the hearing that this court had . . . on the notice"; and, following the court's dismissal of the case, "made no further . . . efforts to contact [the petitioner] within [the] 120 day window." Accordingly, the petitioner argued that the notice that White had filed with the court, "when fairly read, was misleading in terms of the diligence . . . exerted by counsel in trying to reach the petitioner following his deportation." "But for [counsel's] failures," the petitioner asserted, "this matter would not have been dismissed . . . ." In response, the respondent argued that the petitioner had not established good cause to open the judgment fifteen months after his case was dismissed because he had failed to pursue his case diligently and contact his attorney.

Following the hearing, the court denied the petitioner's motion "because the petitioner [had] failed to establish a recognized basis to open the judgment beyond the four month period established by . . . § 52-212a." The court reasoned that, "although guided by equitable principles, [it had] constrained authority based on a showing that the judgment was obtained by fraud, duress, or a mutual mistake. There has been no showing of fraud, duress, or . . . a mutual mistake," given that, "[a]t the hearing, [the petitioner] abandoned any claim that is premised on a legal theory of fraud or quasi-fraud." The court refused to resolve factual disputes and make credibility determinations regarding the date of the petitioner's deportation and who was responsible for the lack of communication among the petitioner, his family, and White, stating that "[r]esolving these diverging factual differences is unnecessary to resolve the present motion, and the court need not delve into credibility determinations, because there has been no threshold showing of any fraud, duress, or mutual mistake." This certified appeal followed.

On appeal, the petitioner claims that (1) the court improperly limited the scope of its authority to open a judgment of dismissal after the passage of the four month limitation period in § 52-212a, and (2) ineffective assistance of habeas counsel is sufficient to invoke the court's authority to grant a late motion to open a judgment. We will address each claim in turn.

We first note our standard of review as to both of the petitioner's claims. "The issue before us in the present case . . . is not whether the trial court properly exercised its discretion . . . but, rather, whether the trial court had authority to do so under the circumstances of this case. . . . This presents a question of law over which we exercise plenary review."[6] (Citation omitted.) *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 166, 75 A.3d 651 (2013); see also *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 239–40, 796 A.2d 1164 (2002) ("[w]hether the trial court had the power to issue the order, as distinct from the question of whether the trial court properly exercised that power, is a question involving the scope of the trial court's inherent powers and, as such, is a question of law").

I

The petitioner first claims that the court improperly limited the scope of its authority to open a judgment of dismissal after the passage of the four month limitation period in § 52-212a by requiring that he make a "threshold" showing of fraud, duress, or mutual mistake. He argues that "[t]his court has recognized an equitable exception to the time limitation set forth in . . . § 52-212a to address injustices in the absence of a showing of fraud, duress, or mutual mistake." In response, the respondent argues that the court applied the proper legal standard[7] and correctly determined that it lacked the authority to open the judgment. Although we disagree with the petitioner that we have recognized an overarching general equitable exception to the four month limitation period, we nonetheless agree that, in the context of the present habeas corpus case, the court's common-law authority to open the judgment was not as limited as it stated in its memorandum of decision.

The following legal principles guide our review. "Habeas corpus is a civil proceeding. . . . The principles that govern motions to open or set aside a civil judgment are well established. . . . A motion to open and set aside judgment is governed by . . . § 52-212a and Practice Book § 17-4." (Citation omitted; internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 563, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 980 (2016). Section 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the

court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which the notice of judgment or decree was sent. . . . The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . ." See also Practice Book § 17-4 (a) (same).

The purpose of § 52-212a is "to protect the finality of judgments." *Kim* v. *Magnotta*, 249 Conn. 94, 102, 733 A.2d 809 (1999); see also *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, 190 Conn. 707, 713, 462 A.2d 1037 (1983) ("[t]he theory underlying . . . rules governing the vacating of judgments is the equitable principle that once a judgment is rendered it is to be considered final . . . and should be left undisturbed by post-trial motions except for a good and compelling reason" (citations omitted)). Consistent with this legislative purpose, our Supreme Court has characterized the four month period "as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it." *Kim* v. *Magnotta*, supra, 104.

"Under [§ 52-212a], the trial court is authorized to open a judgment more than four months after it was rendered when any one of the following four exceptions is satisfied: the parties waived the four month limitation; the parties otherwise submitted to the court's jurisdiction; the court's authority to open the judgment is otherwise authorized by law; or the court has continuing jurisdiction over the judgment." *Reinke* v. *Sing*, 328 Conn. 376, 390–91, 179 A.3d 769 (2018). In the present case, the court sent notice of the dismissal of the underlying habeas petition on February 11, 2021. The petitioner filed his motion to open the judgment on May 19, 2022, which is well beyond four months from the date on which the court sent notice of the judgment. Thus, the court would have had authority to open the judgment only if an exception to § 52-212a applied.

"Courts have interpreted the phrase, [u]nless otherwise provided by law, as preserving the common-law authority of a court to open a judgment after the four month period." (Internal quotation marks omitted.) *Simmons* v. *Weiss*, 176 Conn. App. 94, 99, 168 A.3d 617 (2017). Although "[t]he law favors finality of judgments"; (internal quotation marks omitted) *Ruiz* v. *Victory Properties, LLC*, 180 Conn. App. 818, 828, 184 A.3d 1254 (2018); our courts also have recognized "that, in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity." *Kim* v. *Magnotta*, supra, 249 Conn. 109. It is well established, for example, that "[c]ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment obtained by fraud, duress or mutual mis-

take." *In re Baby Girl B.*, 224 Conn. 263, 283, 618 A.2d 1 (1992).

The court's authority to grant a late motion to open a judgment, however, is not exclusively limited to those three recognized exceptions, as both this court and our Supreme Court previously have recognized other equitable exceptions to the four month time limitation in § 52-212a.[8]

For example, in *Kim* v. *Magnotta*, supra, 249 Conn. 109, our Supreme Court held that, even after the expiration of the four month limitation period, a trial court has the authority to set aside a stipulated judgment that resulted from a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and not from fraud, duress, accident or mistake. See id., 97 n.3. After concluding that "the discretionary equitable authority"; id., 107; conferred on a trial court by General Statutes § 42-110g (a), a provision of CUTPA, "falls within the 'otherwise provided by law' provision of § 52-212a"; id., 109; the court observed that its conclusion was consistent with our case law on § 52-212a, which "recognizes that, in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity. Accordingly, § 52-212a does not permit a person who has committed fraud to rely on a stipulated judgment to shelter gains that were acquired improperly. . . . It is hard to fathom why a person who has committed an unfair trade practice should be treated differently. In both situations, the injured party was unfairly induced to assent to the stipulated judgment." (Citation omitted.) Id.

Similarly, in *Connecticut Savings Bank* v. *Obenauf*, 59 Conn. App. 351, 758 A.2d 363 (2000), the trial court rendered judgment for the plaintiff and awarded more than $41,000 in money damages against the defendant transferee of an allegedly fraudulent conveyance, contrary to the law at the time that "a successful claim of fraudulent conveyance could not result in a judgment of liability against the transferee . . . on the underlying debt obligations owed by the transferor." Id., 354–55. More than four months after the judgment, the defendant moved to open the judgment on the basis of "equitable considerations." Id., 352. The trial court denied the motion to open because "the defendant had not alleged . . . fraud, accident, mistake or clerical error . . . ." Id., 353. On appeal, this court held that, despite the fact that a motion to open was filed outside of the four month period, it was necessary to correct the judgment "on the basis of equitable considerations"; id., 355; because it was both "contrary to law at the time of its rendition"; id., 357; and "facially inconsistent with the complaint."[9] Id., 355. Specifically, the court concluded that the defendant "should not in law or in equity be forced to pay a debt for which she was not

liable. . . . To allow the plaintiff to benefit from a judgment against the defendant in excess of $41,000 that was contrary to law at the time of its rendition shocks the judicial conscience . . . and violates the principles of equity that govern our application of the law. The court's denial of the defendant's motion to open and set aside the money judgment perpetuated this injustice." (Citations omitted; internal quotation marks omitted.) Id., 357. Accordingly, this court reversed the judgment and remanded the case with direction to grant the defendant's motion. Id., 358.

Finally, in *Nelson* v. *Charlesworth*, 82 Conn. App. 710, 846 A.2d 923 (2004), this court held that an attorney's fraudulent conduct was sufficient to allow the court to exercise its equitable authority to open the judgment after the passage of the four month period even though the judgment itself was not obtained by fraud, deviating from the traditional formulation of that exception.[10] After the court granted the plaintiff's motion for default against the defendant and rendered a judgment awarding damages to the plaintiff, the plaintiff's attorney and the defendant's insurer engaged in settlement discussions but failed to reach an agreement. Id., 711–12. At no time during the settlement discussions did the plaintiff's attorney inform the defendant's insurer of the outstanding judgment; instead, the plaintiff's attorney waited until four months and ten days after the court rendered judgment against the defendant to inform the defendant's insurer of that judgment. Id., 712. This court concluded that, "[a]lthough the judgment proper was not brought about by fraud, the finality of the judgment, that is, the running of the four month period, was vitiated by fraud." Id., 714. Given the apparent willingness of the plaintiff's attorney "to negotiate until just after the four month deadline," this court reasoned that "it [was] difficult to imagine that he was attempting to do anything other than to deceive [the insurer]." Id., 715. We further explained that implicit in the plaintiff's attorney's statement to the defendant's insurer that she was interested in settling the case, and implicit in "the settlement negotiations thereafter, was that there was still a case to be settled, i.e., that the plaintiff had not already obtained a judgment against the defendant. The implicit representations by the plaintiff's attorney that the case was still pending and that he had not obtained a judgment could be considered fraud . . . which would allow the court to exercise its equitable powers." Id., 714.

In each of those cases, the reviewing court recognized the trial court's authority to grant a late motion to open a judgment on equitable grounds other than that the judgment itself was procured by fraud, duress, or mutual mistake. Consequently, we conclude that the court in the present case improperly held that its authority to grant the petitioner's motion was limited "based on a showing that the judgment was obtained by fraud,

duress, or a mutual mistake."

## II

The petitioner next claims that the alleged ineffective assistance[11] of his habeas counsel was sufficient to invoke the court's equitable authority to grant the late motion to open. He argues that, "[u]nder the circumstances of this case, White's inaction, coupled with the misleading representations concerning his efforts to communicate with the petitioner, create an equitable basis for reopening the judgment." According to the petitioner, "it would confound reason to preclude a habeas petitioner from reopening a judgment of dismissal after four months when such [dismissal] resulted from appointed counsel's failures."

In response, the respondent argues that, not only does the record not support a finding that White rendered ineffective assistance, "it [also] was unnecessary for the habeas court to make this determination" because, "[a]bsent extraordinary circumstances, attorney negligence, unlike attorney fraud, is not a ground for opening a judgment." During oral argument before this court, however, the respondent conceded that "there might be a case of ineffective assistance of counsel that would fit into [the] 'otherwise provided by law' category if the petitioner showed due diligence on his own part."[12]

For the reasons that follow, we conclude, as a matter of first impression, that the ineffective assistance of habeas counsel under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)[13] is sufficient to invoke the court's common-law authority to grant a late motion to open a judgment.

To provide a context for our discussion, we first examine the purpose of the writ of habeas corpus and the nature of the right to the effective assistance of counsel in a habeas corpus proceeding. Although habeas corpus "is a legal and not an equitable remedy"; (internal quotation marks omitted) *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 45, 130 A.3d 268 (2015); "[i]n the exercise of its power under [General Statutes] § 52-470[14] to grant such relief 'as law and justice require,' the [habeas] court, much like a court of equity, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established. . . . In the [habeas] court's choice among . . . possible remedies, the decisive factor must be the vindication of the [petitioner's] constitutional rights." (Citations omitted; footnote added; footnote omitted.) *Gaines* v. *Manson*, 194 Conn. 510, 528–29, 481 A.2d 1084 (1984); see also *State* v. *Phidd*, 42 Conn. App. 17, 28, 681 A.2d 310 ("[t]he statutory language 'dispose of the case as law and justice require' gives the habeas court the power to conform a remedy to the particular facts"), cert. denied, 238 Conn. 907, 679 A.2d 2 (1996),

cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997).

"The right to petition for a writ of habeas corpus is enshrined in both the United States constitution and the Connecticut constitution. See U.S. Const., art. I, § 9; Conn. Const., art. I, § 12. Indeed, it has been observed that the writ of habeas corpus holds an honored position in our jurisprudence. . . . The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . The writ has been described as a unique and extraordinary legal remedy. . . . It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."[15] (Citations omitted; internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 142–43, 81 A.3d 1209 (2013).

For those reasons, a habeas petitioner, unlike a typical civil litigant, has a "statutory right to habeas counsel pursuant to General Statutes § 51-296,[16] which provides for the appointment of counsel for an indigent person in any habeas corpus proceeding arising from a criminal matter . . . .' " (Footnote in original.) *Lozada* v. *Warden*, 223 Conn. 834, 838, 613 A.2d 818 (1992). "When counsel is so appointed he must be effective and competent. Otherwise, the appointment is a useless formality." (Internal quotation marks omitted.) Id., 838–39. Thus, although it is not a constitutional right, "the weight of sixth amendment protection [extends] to the . . . statutory right to counsel in habeas proceedings . . . ." *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 132, 866 A.2d 649 (2005).

As this court has observed, "[t]he right to counsel plays a crucial role in the adversarial system embodied in the [s]ixth [a]mendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled. . . . That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The [s]ixth [a]mendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. . . . Counsel's role is to ensure that the adversarial testing process works to produce a just result under the standards governing decision." (Citation omitted; internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction*, 167 Conn. App. 809, 821, 144 A.3d 493, cert. denied, 323 Conn. 925, 149 A.3d 982 (2016). The same reasoning applies in the habeas context, as "the right to petition for a writ of habeas corpus, as a means of challenging the legality of a conviction, [is] no less constitutionally significant than the right of a defendant to bring a direct appeal, as a means of challenging

a judgment of conviction." *Fine* v. *Commissioner of Correction*, supra, 147 Conn. App. 144.

Mindful of these principles, we conclude that the ineffective assistance of habeas counsel is sufficient to invoke the court's equitable authority to open a habeas judgment more than four months after it was rendered. Our conclusion finds support in the fundamental fairness origins of the writ of habeas corpus and the importance of the right to habeas counsel in furthering that purpose.[17]

In *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 563, 153 A.3d 1233 (2017), our Supreme Court highlighted the significance of the statutory right to habeas counsel and the fundamental fairness concerns underlying the writ of habeas corpus in support of its conclusion that a petitioner may file a third habeas petition to challenge the effectiveness of the petitioner's counsel in his second habeas proceeding. The court reasoned that, "[g]iven the fundamental fairness origins underlying the common-law writ of habeas corpus, it would be anomalous to conclude that a right as significant as the statutory right to counsel in a second habeas petition that ultimately challenges a criminal conviction, and the concomitant right that the attorney be competent, is one that cannot be vindicated by the writ. . . . Given the overriding concerns of fundamental fairness that underlie the writ of habeas corpus, not allowing a third habeas petition would undermine the very nature of the statutory right provided by § 51-296 (a), which . . . extends to a second habeas petition." (Citation omitted.) Id.

Similarly, in the present case, barring relief from a judgment that was rendered or not timely opened due to the ineffective assistance of habeas counsel on the sole basis that the statutory period has expired would undermine "the fundamental fairness origins underlying the common-law writ of habeas corpus" and "the very nature of the statutory right [to habeas counsel] provided by § 51-296 (a)." Id.; see also *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 147, 712 A.2d 947 (1998) (given "the nature of the right involved . . . [a]s a matter of policy, it would be illogical to deny the right to sentence review to a petitioner who has missed the statutory thirty day filing deadline as a result of unconstitutionally deficient representation"); *Fredericks* v. *Reincke*, 152 Conn. 501, 508, 208 A.2d 756 (1965) (although trial courts ordinarily do not have authority to allow late appeals, "where on habeas corpus it has been properly determined that a right of appeal required by the federal constitution has been denied" due to denial of right to competent counsel, "any rule restricting an appeal merely because of lapse of time necessarily is ineffective to preclude an appeal in accordance with federal constitutional requirements"). Accordingly, similar to our reasoning in *Connecticut*

*Savings Bank* v. *Obenauf*, supra, 59 Conn. App. 357, an equitable exception to the four month limitation period is warranted to avoid perpetuating the injustice of a judgment that was rendered or not timely opened due to habeas counsel's constitutionally deficient performance.

Indeed, in the context of cause and prejudice to excuse procedural default[18] and good cause for delay under § 52-470,[19] our Supreme Court has recognized the distinction between ineffective assistance of counsel and the type of attorney error that typically is insufficient to grant an untimely motion to open. As the court most recently stated in *Rose* v. *Commissioner of Correction*, 348 Conn. 333, 347, 304 A.3d 431 (2023), when counsel's constitutionally deficient performance has caused a habeas petitioner to procedurally default on a habeas claim or file a habeas petition outside of the time period set forth in § 52-470, "the [s]ixth [a]mendment itself requires that responsibility for the [error] be imputed to the [s]tate. . . . In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of [the] petitioner's right to counsel, so that the error must be seen as an external factor, i.e., imputed to the [s]tate." (Internal quotation marks omitted.) Accordingly, the court explained that, in the context of procedural default, "a petitioner is bound by his counsel's inadvertence, ignorance, or tactical missteps, regardless of whether counsel is flouting procedural rules or hedging against strategic risks . . . [but] not . . . by the ineffective assistance of his counsel." (Internal quotation marks omitted.) Id., 348; see also *Coleman* v. *Thompson*, 501 U.S. 722, 754, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (under "well-settled principles of agency law" client is bound by "alleged attorney error" unless it rises to level of ineffective assistance); *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 570, 941 A.2d 248 (2008) (under procedural default doctrine, "although ignorance or inadvertence is not cause, ineffective assistance of counsel is a legitimate ground for cause" (internal quotation marks omitted)); *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001) ("attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of [trial and] appellate procedure" (internal quotation marks omitted)). In *Rose*, our Supreme Court relied on those cases in concluding "that ineffective assistance of counsel . . . [also] may constitute good cause to excuse the late filing of a habeas petition under the totality of the circumstances pursuant to § 52-470 (c) and (e)." *Rose* v. *Commissioner of Correction*, supra, 348.

We conclude that the same reasoning applies to a late motion to open based on a claim of ineffective assistance of habeas counsel. We recognize that this court consistently has held that an attorney's negligence by itself does not provide a sufficient basis to open a

civil judgment under either § 52-212a or General Statutes § 52-212.[20] See *Dziedzic* v. *Pine Island Marina, LLC*, 143 Conn. App. 644, 653, 72 A.3d 406 (2013) ("[n]egligence of a party or [its] counsel is insufficient for purposes of § 52-212 to set aside a default judgment" (internal quotation marks omitted)); *In re Ilyssa G.*, 105 Conn. App. 41, 48–49, 936 A.2d 674 (2007) (same), cert. denied, 285 Conn. 918, 943 A.3d 475 (2008); *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 364, 794 A.2d 1043 (2002) ("[t]hough the defendants' prior attorney may deserve some blame, his possible negligence alone does not provide this court with a sufficient reason for holding inapplicable the four month limitation contained in § 52-212a"); *Segretario* v. *Stewart-Warner Corp.*, 9 Conn. App. 355, 363, 519 A.2d 76 (1986) ("[n]egligence of a party or his counsel is insufficient to reinstate the action"). Relying on these cases, the respondent contends that this principle "governs equally in habeas [cases] . . . as in other civil contexts."[21] We are not persuaded, however, that this principle applies when counsel's negligence rises to the level of constitutionally deficient performance.

As previously noted in this opinion, habeas corpus proceedings, although civil in nature, "are unique in that they involve the petitioner's liberty and the amount of time the petitioner will be incarcerated." (Internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, supra, 147 Conn. App. 144. Consequently, our Supreme Court has recognized that a violation of the right to effective assistance of counsel differs substantially from attorney error in a case where there is no such right. It has explained that, although this court has held that "a habeas attorney's ignorance of the law and poor advice that results in the untimely filing of a habeas petition is not an external objective factor sufficient to establish good cause under § 52-470"; *Rose* v. *Commissioner of Correction*, supra, 348 Conn. 348; we have not held "that ineffective assistance of counsel can *never* constitute good cause under § 52-470 as a matter of law." (Emphasis in original.) Id., 349.

Although the procedural rule at issue in *Rose* is specific to habeas corpus proceedings and, therefore, differs from § 52-212a, which applies to all civil judgments, our Supreme Court has recognized that some rules that are generally applicable to civil cases should apply differently in the habeas context. For example, the court limits the application of the doctrine of res judicata, or claim preclusion, in the habeas context "to claims that actually have been raised and litigated in an earlier proceeding."[22] (Internal quotation marks omitted.) *Ross* v. *Commissioner of Correction*, 337 Conn. 718, 729, 256 A.3d 118 (2021). As our Supreme Court has observed, quoting the United States Supreme Court in *Sanders* v. *United States*, 373 U.S. 1, 8, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963), "[c]onventional notions of finality of litigation have no place where life or liberty is at stake

and the infringement of constitutional rights is alleged." (Internal quotation marks omitted.) *James L.* v. *Commissioner of Correction*, supra, 245 Conn. 142 n.11. Our Supreme Court has further explained that, "[a]lthough the doctrine of res judicata in its fullest sense bars claims that could have been raised in a prior proceeding, such an application in the habeas corpus context would be unduly harsh. . . . Unique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Foremost among those considerations is the interest in making certain that no one is deprived of liberty in violation of his or her constitutional rights." (Internal quotation marks omitted.) *Ross* v. *Commissioner of Correction*, supra, 728–29. The same policy considerations guide our application of the doctrine of collateral estoppel, or issue preclusion, to habeas corpus proceedings. Id., 729.

Similarly, here, a rigid rule that, in the absence of proof of fraud, duress, or mutual mistake, the negligence of habeas counsel that rises to the level of constitutionally deficient performance is not a valid basis to open a judgment also would be unduly harsh and, therefore, contrary to general principles of equity. See *Holland* v. *Florida*, 560 U.S. 631, 649–51, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (reasoning that rule that attorney misconduct, even if "grossly negligent," cannot justify equitable tolling of statute of limitations on federal habeas claims in absence of proof of bad faith, dishonesty, divided loyalty, mental impairment, or like, "is difficult to reconcile with more general equitable principles in that it fails to recognize that, at least sometimes, professional misconduct that fails to meet [that] standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling" (internal quotation marks omitted)). For these reasons, we reject the respondent's contention that we should treat ineffective assistance of counsel in a habeas corpus case the same as ordinary attorney negligence in a typical civil case.

In sum, given both the significant liberty interests at stake in habeas proceedings and the importance of the right to counsel in such proceedings, we hold that, unlike attorney negligence in the traditional civil context, ineffective assistance of counsel is sufficient to invoke the court's equitable authority to open a habeas judgment more than four months after it was rendered.

The respondent argues, however, that, even if ineffective assistance of counsel might be a sufficient basis to invoke the court's authority to grant relief from a judgment in some habeas cases, this is not such a case because the petitioner failed to exercise due diligence to communicate with White or to monitor the status of his case. Therefore, according to the respondent, the court "properly exercised its discretion in determining

that the petitioner's conduct obviated any claim for relief on his late motion."

The problem with the respondent's argument is that the court never exercised its discretion in this case. Instead, it concluded that it lacked the authority to do so. To be sure, had the court exercised its discretion, the petitioner's diligence would have been an important consideration.[23] To a significant extent though, the petitioner's lack of diligence in pursuing his habeas petition or filing a timely motion to open is relevant to the second prong of a claim of ineffective assistance of counsel—whether counsel's deficient performance prejudiced the petitioner. See *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 264, 112 A.3d 1 (2015) ("[t]o satisfy the prejudice prong [under *Strickland*], [the petitioner] must demonstrate that there is a reasonable probability that, *but for counsel's unprofessional errors*, the result of the proceeding would have been different" (emphasis added; internal quotation marks omitted)).

In the present case, the court did not assess the petitioner's ineffective assistance of counsel claim under either prong of *Strickland* and declined to resolve factual disputes relevant to both inquiries. Although the court's discussion of the petitioner's conduct suggests that the court may have viewed his conduct as insufficiently diligent, it is generally unclear whether, in stating certain facts in its memorandum of decision, the court was making factual findings or was simply describing the state of the evidence.[24] Moreover, the court explicitly stated that it was not resolving factual disputes or making credibility determinations "because there [had] been no threshold showing of any fraud, duress, or mutual mistake." Given the court's statement that it was not resolving factual disputes in light of its lack of authority to open the judgment, we decline the respondent's invitation to decide the merits of the petitioner's motion to open on the basis of suggested or implicit findings. See, e.g., *Small* v. *Commissioner of Correction*, 286 Conn. 707, 716, 946 A.2d 1203 ("[w]hen the record on appeal is devoid of factual findings by the habeas court as to the performance of counsel, it is improper for an appellate court to make its own factual findings"), cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). Put differently, accepting the respondent's argument would require that we speculate not only as to how the court would have resolved key factual disputes but also as to how it would have exercised its discretion had it not been operating under an unnecessarily limited view of its authority, which we will not do. See, e.g., *State* v. *Hoskie*, 74 Conn. App. 663, 674, 813 A.2d 136 ("we cannot now speculate as to how the court would have responded to a timely request for a continuance"), cert. denied, 263 Conn. 904, 819 A.2d 837 (2003).

Accordingly, we must remand this case for a new hearing on the petitioner's motion to open. See *McDermott* v. *State*, 316 Conn. 601, 611, 113 A.3d 419 (2015) (concluding that it was "necessary to remand the case to the trial court for a new trial to allow the parties to present their cases with the correct legal standard in mind and to allow the trial court to evaluate the facts in light of this correct legal standard").

On remand, if the court determines that it has authority to open the judgment because the petitioner has satisfied both prongs of the *Strickland* test, the exercise of that authority is left to the court's discretion. See *Newtown* v. *Ostrosky*, 191 Conn. App. 450, 468, 215 A.3d 1212 ("equitable authority is vested in the discretion of the trial court . . . to grant or to deny a motion to open a judgment" (internal quotation marks omitted)), cert. denied, 333 Conn. 925, 218 A.3d 68 (2019). Thus, the court must determine, as a threshold matter, whether White's representation of the petitioner in connection with the court's dismissal of the action and with the failure to file a timely motion to open constitutes ineffective assistance under *Strickland*. If the court concludes that both prongs of *Strickland* are satisfied, and that it therefore has the authority to entertain the petitioner's motion, the court then may consider whether the totality of the facts and circumstances warrant exercising its authority to grant the motion.[25]

The judgment is reversed and the case is remanded for a new hearing on the petitioner's motion to open the judgment of dismissal.

In this opinion the other judges concurred.

[1] See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[2] Clue v. *State Prison Warden*, Superior Court, judicial district of Tolland, Docket No. CV-15-4007334-S (October 3, 2019).

[3] The court explained that, "[a]fter a trial on the merits, the court, *Newson, J.*, granted the [2015 habeas] petition on October 3, 2019, vacated the convictions, and ordered the criminal charges restored to the docket. The respondent [the Commissioner of Correction] appealed from the granted petition for certification to appeal (AC 43537) but withdrew the appeal on March 13, 2020. [Attorney Daniel] Lage continues to represent [the petitioner] on those criminal charges. [The petitioner's] rearrest was ordered, but because he was deported to Jamaica, his rearrest has not been effectuated."

[4] White certified that the notice had been served on counsel for the respondent, the Commissioner of Correction, but provided no certification that he had served or attempted to serve the petitioner or any member of his family, and the petitioner claims in his appellate brief that he "was not provided notice of the status conference" that resulted in the written notice prepared by White at the request of the habeas court.

[5] The record is unclear as to what efforts, if any, were made to provide the petitioner with notice of the February 11, 2021 hearing.

[6] To the extent that our resolution of the petitioner's claim requires us to interpret the relevant statutes, our review is also plenary. See *Trumbull* v. *Palmer*, 161 Conn. App. 594, 598–99, 129 A.3d 133 (2015) ("Whether a court has authority to grant a motion to open requires an interpretation of the relevant statutes. Statutory construction, in turn, presents a question of law over which our review is plenary." (Internal quotation marks omitted.)), cert. denied, 320 Conn. 923, 133 A.3d 458 (2016).

[7] The respondent contends that, "[a]lthough the habeas court did not state that cases exist presenting extraordinary exceptions equivalent to the standard common-law categories of fraud, duress and mutual mistake,"

pursuant to *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 981 A.2d 1068 (2009), the court is nonetheless "presumed to have known our jurisprudence and found no comparable extraordinary circumstances here that would authorize opening [the judgment] beyond [four months]." In *Kaczynski* v. *Kaczynski*, supra, 130–31, our Supreme Court held that, "[w]hen a trial court in a civil matter requiring proof by clear and convincing evidence fails to state what standard of proof it has applied, a reviewing court will presume that the correct standard was used." The respondent quotes this case for the proposition that, "[a]bsent a record that demonstrates that the trial court's reasoning was in error, we presume that the trial court correctly analyzed the law and the facts in rendering its judgment . . . ." (Internal quotation marks omitted.) Id., 130.

As the respondent's brief suggests, however, we apply the presumption that the court applied the correct legal standard only "in the absence of some clear indication to the contrary . . . ." *In re Annessa J.*, 343 Conn. 642, 676, 284 A.3d 562 (2022). In the present case, the court unambiguously stated in its memorandum of decision that, "although guided by equitable principles, [it had] constrained authority based on a showing that the judgment was obtained by fraud, duress, or a mutual mistake. There has been no showing of fraud, duress, or that a mutual mistake occurred." The court reiterated this understanding of its authority at the end of its memorandum of decision, stating that it was unnecessary to resolve factual disputes or make credibility determinations "because there has been no threshold showing of any fraud, duress, or mutual mistake." Although the court acknowledged that § 52-212a "gives a court common-law authority to open the judgment after the four month period," the court nonetheless limited itself to those three generally recognized equitable exceptions to the time limitation. The court's memorandum of decision, therefore, clearly indicates that it was operating under an unnecessarily constrained view of its authority. Given this clear indication to the contrary, we will not presume that the court applied the correct legal standard. See *In re Annessa J.*, supra, 676.

[8] This court also has recognized that "[a] court may correct a clerical error at any time, even after the expiration of the four month period." (Internal quotation marks omitted.) *Cusano* v. *Burgundy Chevrolet, Inc.*, 55 Conn. App. 655, 659, 740 A.2d 447 (1999), cert. denied, 252 Conn. 942, 747 A.2d 519 (2000); see also *Ryan* v. *Cassella*, 180 Conn. App. 461, 477, 184 A.3d 311 (2018) (holding that "§ 52-212a did not preclude the court from granting [a] motion to correct a technical defect in a party's name" more than four months after entry of default judgment, because to conclude otherwise "would provide [a party] with a windfall as a result of a misnomer" (internal quotation marks omitted)).

[9] See Practice Book § 17-41 ("[u]pon a default, the plaintiff can have no greater relief than that demanded in the complaint"); *Altberg* v. *Paul Kovacs Tire Shop, Inc.*, 31 Conn. App. 634, 642–43, 626 A.2d 804 (1993) (remanding case with direction to correct judgment because plaintiff "obtained more relief than that demanded in his complaint").

[10] See, e.g., *In re Baby Girl B.*, supra, 224 Conn. 283 ("[c]ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment *obtained by* fraud, duress or mutual mistake" (emphasis added)).

[11] The petitioner characterizes his claim that White's notice to the court was misleading as a claim of "quasi-fraud," which he argues, independent of his ineffective assistance of counsel claim, would provide the court with authority to open the judgment following the expiration of the statutory period. During oral argument before this court, counsel for the petitioner explained that a claim of quasi-fraud has the "same legal effects as fraud" but would not require the petitioner to prove that White had the intent to deceive. The petitioner further explains in his brief that, although "the evidence did not demonstrate a showing of actual fraud . . . the instant case evidenced elements of fraud due to the misleading nature of the representations that White had made in the notice filed with the habeas court to accomplish the dismissal of this action."

We are unaware of any case in which our Supreme Court or this court has used the phrase "quasi-fraud" in any circumstance and certainly not as a ground to grant an untimely motion to open. Furthermore, we see little utility in attaching such a title to an equitable ground for an untimely motion to open other than fraud, duress, or mutual mistake. Instead, the focus of the court considering the untimely motion is whether the ground raised is of similar magnitude to fraud, duress, or mutual mistake, such that "the principle of protection of the finality of judgments must give way to the

principle of fairness and equity." *Kim* v. *Magnotta*, supra, 249 Conn. 109. Thus, the pertinent question in the present appeal is whether the petitioner's claim of ineffective assistance of counsel, which involved allegations that White performed deficiently through inaction, invokes the court's equitable authority to consider opening the judgment more than four months after it was rendered.

[12] Additionally, the respondent argues that the petitioner's failure to file the underlying habeas petition before the statutory deadline under § 52-470 (c), presumptively without good cause, undermines the petitioner's arguments on appeal. The issue of whether the petitioner can overcome the statutory presumption that his habeas petition was filed late without good cause, however, is an inherently fact bound inquiry that has yet to be addressed by the trial court. See *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 435–36, 274 A.3d 85 (2022) ("a habeas court's determination of whether a petitioner has satisfied the good cause standard in a particular case requires a weighing of the various facts and circumstances offered to justify the delay, including an evaluation of the credibility of any witness testimony" (internal quotation marks omitted)). Accordingly, we refuse to address that issue on appeal. See *Berka* v. *Middletown*, 205 Conn. App. 213, 220–21, 257 A.3d 384 ("[b]ecause our review is limited to matters in the record, we . . . will not address issues not decided by the trial court" (internal quotation marks omitted)), cert. denied, 337 Conn. 910, 253 A.3d 44, cert. denied, U.S. , 142 S. Ct. 351, 211 L. Ed. 2d 186 (2021).

[13] "Under *Strickland*, [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 264, 112 A.3d 1 (2015).

[14] General Statutes § 52-470 provides in relevant part: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require. . . ."

[15] This important function of the writ of habeas corpus is not lost where, as here, the petitioner is released from custody during the pendency of his habeas petition and is residing in another country when there remains "a reasonable possibility of prejudicial collateral consequences should [he] seek to lawfully reenter the United States" following his deportation. *State* v. *Jerzy G.*, 326 Conn. 206, 223, 162 A.3d 692 (2017).

[16] "General Statutes § 51-296 (a) provides in relevant part: 'In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . .' " *Lozada* v. *Warden*, 223 Conn. 834, 838 n.7, 613 A.2d 818 (1992).

[17] We emphasize that our holding is limited to the context of habeas corpus proceedings that challenge the legality of a criminal conviction. Our holding, therefore, should not be construed as recognizing an exception to the four month limitation period on the basis of ineffective assistance of counsel in any other context in which there is a right to counsel, such as proceedings in juvenile matters. Indeed, this court previously has recognized that the sixth amendment protections that extend to the statutory right to habeas counsel do not similarly extend to a parent's right to counsel in neglect or termination of parental rights proceedings. See *In re Ceana R.*, 177 Conn. App. 758, 772, 172 A.3d 870, cert. denied, 327 Conn. 991, 175 A.3d 1244 (2017); *In re Isaiah J.*, 140 Conn. App. 626, 640, 59 A.3d 892, cert. denied, 308 Conn. 926, 64 A.3d 333, cert. denied sub nom. *Megan J.* v. *Katz*, 571 U.S. 924, 134 S. Ct. 317, 187 L. Ed. 2d 224 (2013). Moreover, our Supreme Court has explained that different legal standards govern claims of ineffective assistance of counsel in termination of parental rights cases and in criminal habeas corpus cases because "the finality considerations in a collateral challenge to a termination of parental rights are drastically different from those presented by a writ of habeas corpus attacking a criminal convic-

tion with respect to the fundamental fairness concerns that drive the availability of the writ as a common-law remedy. . . . [T]he complete deprivation of personal liberty represented by incarceration demands a thorough search for the innocent. In the context of termination cases, extended litigation imposes that burden on the most vulnerable people whom the system and such cases seek to protect: the children." (Citations omitted; internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 569 n.18, 153 A.3d 1233 (2017).

[18] Pursuant to the procedural default doctrine, "a petitioner is barred from raising a claim for the first time in a habeas proceeding unless there is cause and prejudice to excuse the procedural default . . . ." *Rose* v. *Commissioner of Correction*, 348 Conn. 333, 347 n.8, 304 A.3d 431 (2023).

[19] General Statutes § 52-470 provides in relevant part: "(c) Except as provided in subsection (d) of this section, there shall be a rebuttable presumption that the filing of a petition challenging a judgment of conviction has been delayed without good cause if such petition is filed after the later of the following: (1) Five years after the date on which the judgment of conviction is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2017; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. . . .

"(e) In a case in which the rebuttable presumption of delay under subsection (c) or (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. . . ."

[20] General Statutes § 52-212 applies specifically to judgments upon default or nonsuit and provides in relevant part: "(a) Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which the notice of judgment or decree was sent, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense. . . ."

[21] The respondent cites three habeas cases in support of this argument. None of these cases, however, addressed a trial court's denial of an untimely motion to open a judgment that was allegedly rendered due to the ineffective assistance of habeas counsel and, therefore, these cases do not affect our analysis. See *Diaz* v. *Commissioner of Correction*, 214 Conn. App. 199, 228, 280 A.3d 526 (court did not abuse its discretion in denying motion to open because petitioner failed to meet essential requirement for granting motion to open on basis of newly discovered evidence, namely, "that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at trial" (internal quotation marks omitted)), cert. denied, 345 Conn. 967, 285 A.3d 736 (2022); *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 76–77, 256 A.3d 684 (same), cert. denied, 339 Conn. 909, 261 A.3d 744 (2021); *Carmon* v. *Commissioner of Correction*, 148 Conn. App. 780, 788, 87 A.3d 595 (2014) ("the court acted well within its authority in rendering a default judgment, and . . . it did not abuse its discretion in concluding that such a judgment was warranted" because petitioner failed to provide any appropriate explanation for his failure to comply with pleading requirements under General Statutes § 52-110).

[22] "[T]he doctrine of res judicata in the habeas context must be read in conjunction with Practice Book § 23-29 (3), which [further] narrows its application." *Kearney* v. *Commissioner of Correction*, 113 Conn. App. 223, 235, 965 A.2d 608 (2009). Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new

evidence not reasonably available at the time of the prior petition . . . .” “Following this analytical pathway, a second petition alleging the same ground as a previously denied petition will elude dismissal if it alleges grounds not actually litigated in the earlier petition and if it alleges new facts or proffers new evidence not reasonably available at the time of the earlier petition.” *Kearney* v. *Commissioner of Correction*, supra, 235.

[23] See footnote 25 of this opinion.

[24] The court included the following discussion in its memorandum of decision regarding the parties’ conduct in relation to the underlying action: “White’s notice accompanying the caseflow request and the affidavit submitted by the respondent detail the unsuccessful efforts to contact [the petitioner] and his family members. Additionally, the notice and affidavit indicate that White was not contacted by [the petitioner] and his family members and provided with [the petitioner’s] contact information. Juxtaposed with the present matter is the 2015 habeas and the communications between Lage and [the petitioner] and his family members. There is little apparent logic in maintaining communications with Lage in the restored criminal charges resulting from the successful 2015 habeas, where [the petitioner] has been ordered rearrested but remains in Jamaica, but not having communications with White in the pending habeas awaiting trial. The success in one habeas would seem to engender pursuing habeas relief in a second pending case, especially because successful challenges to all state convictions have the potential to either eliminate all grounds for removal from the country or prevent reentry. Yet [the petitioner] testified that he called Lage from Jamaica in either June or July of 2020, shortly after his deportation, but did not try to call White until August of 2020, and tried again in October of 2020. [The petitioner] then gave up contacting White. [The petitioner’s] habeas testimony provides no explanation why he would contact Lage and maintain regular communications after arriving in Jamaica, but [he] delayed establishing contact with White and made little effort communicating with White. Although this court dismissed the petition on February 11, 2021, neither [the petitioner], who had Internet access in Jamaica, nor Kelly Clue, who divided her time between Connecticut and Jamaica and had Internet access in both places, found out about the dismissal until approximately early 2022. Yet [the petitioner] and Kelly Clue maintained contact with Lage by telephone.

“Although correspondence from White to [the petitioner] was entered into evidence, no telephone records were provided to the court to substantiate any of the cell phone calls. Nor is there any official document that assists this court in establishing when [the petitioner] was deported. According to [the petitioner] and Ellis, he was deported on June 5, 2020. White’s notice and affidavit, however, indicate that he called [the petitioner] at the Wyatt Detention Center on June 13, 2020. The time [the petitioner] spent in a Jamaican hospital when he was deported would overlap in large part with the June 5 [through] 13 time frame. *Resolving these diverging factual differences is unnecessary to resolve the present motion, and the court need not delve into credibility determinations, because there has been no threshold showing of any fraud, duress, or mutual mistake.*” (Emphasis added.)

[25] The court may consider factors such as whether the petitioner, despite counsel’s ineffective assistance, nevertheless unreasonably delayed in moving to open the judgment; see *Newtown* v. *Ostrosky*, supra, 191 Conn. App. 470–72 (noting that court’s authority to entertain defendant’s late motion to open based on lack of notice “was not limited by the four month rule established by § 52-212a” but concluding that court did not abuse its discretion in denying motion because defendant waited more than two years before moving to open judgments); whether the petitioner’s underlying claim is nonfrivolous; see *In re Baby Girl B.*, supra, 224 Conn. 294 (affirming trial court’s decision to grant petition to open judgment terminating mother’s parental rights where trial court concluded that “genuine issues exist, which, if established after a full hearing on the merits could constitute a meritorious defense to the allegations of the petition to terminate [the] mother’s parental rights” (internal quotation marks omitted)); whether granting the untimely motion to open will unduly prejudice the respondent; see *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 134, 629 A.2d 413 (1993) (“[a] [s]tate’s procedural rules . . . [afford] . . . the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant’s claim and to retry the defendant effectively if he prevails in his appeal” (internal quotation marks omitted)); whether the petitioner has other options to challenge his conviction, for example, the filing of a new habeas petition; or whether, because he is no longer in custody, opening

the habeas judgment is the petitioner's sole opportunity to challenge his judgment of conviction. See *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998) (Our Supreme Court prefers "to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Citations omitted; internal quotation marks omitted.)).

_____