LASCELLES A. CLUE *v.* COMMISSIONER
OF CORRECTION
(SC 21002)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

*Syllabus*

Pursuant to statute (§ 52-212a), "[u]nless otherwise provided by law . . .
a civil judgment . . . rendered in the Superior Court may not be opened
. . . unless a motion to open . . . is filed within four months following the
date on which the notice of judgment . . . was sent."

The petitioner filed a habeas petition in 2018, challenging an earlier convic-
tion. In 2020, the petitioner was deported. Subsequently, the petitioner's
habeas counsel unsuccessfully attempted to contact both the petitioner and
certain of the petitioner's family members. In 2021, after a hearing, the
habeas petition was dismissed on the ground that the petitioner had failed to
appear and prosecute the petition with due diligence. In 2022, approximately
fifteen months later, the petitioner filed a motion to open the judgment
dismissing his habeas petition, claiming, inter alia, that he had not received
notice of the hearing that led to the dismissal and that his counsel had failed
to make reasonable efforts to notify him and to communicate with him
effectively. The habeas court denied the petitioner's motion to open, conclud-
ing that the petitioner had failed to establish a recognized basis for opening
the judgment of dismissal beyond the four month period prescribed by § 52-
212a. On appeal from the denial of the motion to open, the Appellate Court
reversed, holding that a claim of ineffective assistance of habeas counsel
was sufficient to invoke the habeas court's common-law authority to grant
a late motion to open a judgment. On the granting of certification, the
respondent, the Commissioner of Correction, appealed to this court. *Held*:

The Appellate Court incorrectly concluded that ineffective assistance of
habeas counsel could provide a common-law basis for a habeas court to
open a judgment beyond the four month period prescribed by § 52-212a,
and, accordingly, this court reversed the Appellate Court's judgment and
remanded the case with direction to affirm the habeas court's denial of the
motion to open.

This court concluded that the phrase "[u]nless otherwise provided by law"
in § 52-212a could not be construed so broadly as to include a new judicially
created common-law exception for the ineffective assistance of habeas
counsel.

Moreover, allowing the opening of a habeas judgment outside the four month
deadline on the basis of the ineffective assistance of habeas counsel would

Clue *v.* Commissioner of Correction

undermine the statutory scheme governing habeas corpus, including the legislature's goal of ensuring expedient resolution of habeas cases.

Furthermore, permitting the opening of a habeas judgment beyond the four month deadline on the basis of ineffective assistance of habeas counsel would, in many cases, and in the present case, bypass the legislative requirement that a petitioner be in custody when he files a habeas petition.

(*One justice dissenting*)

Argued April 10—officially released August 26, 2025

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, geographical area number nineteen, where the court, *Oliver, J.*, rendered judgment dismissing the petition; thereafter, the court, *Oliver, J.*, denied the petitioner's motion to open the judgment, and the petitioner, on the granting of certification, appealed to the Appellate Court, *Bright, C. J.*, and *Alvord* and *Pellegrino, Js.*, which reversed the habeas court's denial of the petitioner's motion to open the judgment of dismissal and remanded the case for a new hearing on the petitioner's motion to open, from which the respondent, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, were *David Applegate*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellant (respondent).

*James E. Mortimer*, assistant public defender, for the appellee (petitioner).

*Opinion*

McDONALD, J. This certified appeal requires us to determine the scope of a habeas court's authority to open a judgment outside of the four month period set

Clue *v.* Commissioner of Correction

forth in General Statutes § 52-212a.[1] The respondent, the Commissioner of Correction, appeals from the judgment of the Appellate Court, which concluded that, in the context of a habeas case, the court has the authority to consider an otherwise untimely motion to open that is based on the ineffective assistance of habeas counsel. See *Clue* v. *Commissioner of Correction*, 223 Conn. App. 803, 820–21, 309 A.3d 1239 (2024). The respondent contends that a habeas court lacks authority to open a judgment outside of the four month statutory deadline under a common-law exception for ineffective assistance of habeas counsel claims. We agree with the respondent. Accordingly, we reverse the judgment of the Appellate Court.

The petitioner, Lascelles A. Clue, filed the underlying habeas petition in 2018, challenging his conviction for robbery in the first degree that resulted from a 2011 guilty plea. The basis of the habeas petition was the allegedly ineffective assistance of his trial attorneys. The petitioner requested that counsel be appointed to represent him in the habeas action, and Attorney Patrick White filed an appearance with the court as the petitioner's counsel. In 2020, the petitioner was deported to Jamaica. Prior to being deported, the petitioner successfully obtained relief in another habeas case challenging a different conviction. See *Clue* v. *Warden*, Docket No. TSR-CV-15-4007334-S, 2019 WL 5549400 (Conn. Super. October 3, 2019). In that case, the petitioner was represented by Attorney Daniel Lage.

In January, 2021, White filed a caseflow request for a video status conference. In that request, White represented that the petitioner had been deported and that White's attempts to contact the petitioner, as well as

[1] Although § 52-212a was the subject of an amendment in 2021; see Public Acts 2021, No. 21-104, § 44; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

Clue *v.* Commissioner of Correction

the petitioner's mother and wife, were unsuccessful. The habeas court granted White's request and held a status conference later that month, during which it ordered White to file a notice with the court, detailing his efforts to communicate with the petitioner and his family. Accordingly, "[o]n January 27, 2021, White filed a notice that there had been a breakdown in communication between him and [the petitioner]. The notice detailed the history of White's interactions with [the petitioner] until his deportation and [White's] efforts thereafter to contact [the petitioner] and his family. White represented that all his efforts to contact [the petitioner], as well as [the petitioner's] mother and wife, had been unsuccessful. The notice concluded with the assertion that the case could not proceed without [the petitioner]."

The habeas court thereafter issued an order that the matter would be scheduled for a hearing on the court's own motion to dismiss based on the petitioner's failure to contact and cooperate with White in prosecuting the habeas petition with due diligence. Following a hearing on February 11, 2021, the court dismissed the petition because of the petitioner's failure to appear and prosecute the petition with due diligence.

Approximately fifteen months later, on May 18, 2022, the petitioner filed a motion to open the judgment of dismissal and a supporting memorandum of law. The petitioner claimed: "[He] did not receive notice of [White's] caseflow request" and the ensuing hearing, he "did not waive his right to be present at the [dismissal hearing]," White "failed to make reasonable efforts to apprise [him] of the status of [the] matter," and White failed to communicate effectively with him, his family contacts, or attorneys who represented him in other cases. The respondent objected to the motion to open on the grounds that it was untimely, the petitioner had failed to keep White apprised of his whereabouts and contact information, and the petitioner did not act with

Clue *v.* Commissioner of Correction

diligence in seeking to open the judgment. The respondent also submitted an affidavit from White, which detailed White's efforts to communicate with the petitioner and the petitioner's family members after his deportation.

The habeas court held a hearing on the petitioner's motion to open in June and July, 2022, during which it heard testimony from the petitioner, White, Lage, the petitioner's mother, Fay Ellis, and the petitioner's wife, Kelly Clue. On the basis of the testimony at the hearing, the habeas court set forth the following additional facts in its memorandum of decision. "[The petitioner] was at a federal detention center for approximately three months prior to his deportation. [The petitioner] and White corresponded with each other and spoke once while [the petitioner] was at the federal detention center. White knew that [the petitioner] would be deported." Accordingly, "White told [the petitioner] that, if [the petitioner] were deported, then [the petitioner] would need to provide contact information, and [White] instructed [the petitioner] to contact him."

Following the petitioner's deportation, "[b]ecause [White] did not have any contact information for [the petitioner] in Jamaica, [he] tried calling Kelly Clue and Ellis, who were listed on the contact sheet provided by [the petitioner], but he did not write to them. White did not have any specific, independent recollection of leaving messages for Kelly Clue and Ellis, but it is his practice to leave such messages. White did not receive any [callbacks]." Ellis testified, however, "that she ha[d] never been contacted by White . . . whether [predeportation] or postdeportation." Similarly, Kelly Clue testified that she has never had any contact with White or his law firm.

The petitioner testified that "he had White's phone number in an address book . . . [and had] tried calling White two or three times after he was deported, once in August of 2020 and twice in October of 2020 . . .

Clue *v.* Commissioner of Correction

[and that he had] left voicemail messages, which included his cell phone number, on White's extension but did not receive any [callbacks]. . . . In early 2021, [the petitioner's] cell phone was disconnected, and he obtained [a new phone number]. [The petitioner] did not provide his new number to [White].'' Ellis, however, testified that she ''had daily contact [with the petitioner] via phone calls'' since his deportation and that ''she has had contact with him via . . . video calls, emails, and text messages.'' Kelly Clue also ''had contact with [the petitioner] via phone calls and emails, beginning a few days after his deportation'' to Jamaica. Moreover, the petitioner spoke with Lage, the attorney who represented him in his other habeas proceeding, ''numerous times between the summer of 2020 and spring of 2022.''

The habeas court found that the petitioner ''had no notice of the January 27, 2021 scheduling order,'' which would have informed him ''that there would be a hearing on the court's own motion to dismiss based on [his] failure to prosecute this case with due diligence, as well as that the matter might be dismissed if [he] failed to appear. In either January or February of 2022, [the petitioner] found out about the dismissal from Kelly Clue, who was checking on the case status before the originally scheduled trial date. . . . Although [the petitioner] was unable to access the Judicial [Branch] website from Jamaica, he was able to look up information for the Office of the Chief Public Defender (OCPD) and [to] seek [its] assistance in opening this case. [The petitioner] contacted OCPD about one month after he found out that this case had been dismissed. [The petitioner] searched for White [on the Internet], never asked Lage to contact White, did not write a letter to White, and did not complain to OCPD about White, even though he had given up on White.''

At the hearing on the petitioner's motion to open, counsel for the petitioner argued that there should be

Clue *v.* Commissioner of Correction

"a quasi-fraud equitable exception to the [four month] rule . . . predicated . . . on ineffective assistance of counsel or attorney negligence." The petitioner's counsel claimed that White failed to communicate with the petitioner about the status of his case, "failed to notify [the petitioner] of the filing of [the] notice [with the court] . . . the status conference . . . and the hearing that [the] court had . . . on the notice," and, following the court's dismissal of the habeas petition, "made no further . . . efforts to contact [the petitioner] within [the four month] window." Accordingly, the petitioner's counsel argued that the notice that White had filed with the court, "when fairly read . . . [was] misleading . . . as to the diligence . . . exhibited by . . . White . . . in his efforts to reach the petitioner" following his deportation. The petitioner's counsel asserted that, but for White's failures, the petitioner's habeas petition would not have been dismissed. In response, counsel for the respondent argued that the petitioner had not established good cause to open the judgment fifteen months after his petition was dismissed because he had failed to pursue his case diligently and to contact White.

The habeas court subsequently denied the petitioner's motion to open "because the petitioner ha[d] failed to establish a recognized basis to open the judgment beyond the four month period established by . . . § 52-212a." The court reasoned that, "although guided by equitable principles, [it had] constrained authority [to open a judgment that was limited to cases in which the movant could show] that the judgment was obtained by fraud, duress, or a mutual mistake. There has been no showing of fraud, duress, or . . . a mutual mistake" in this case, given that, "[a]t the hearing, [the petitioner had] abandoned any claim that is premised on a legal theory of fraud or quasi-fraud."[2]

[2] During the hearing on the petitioner's motion to open, counsel for the petitioner conceded, "I don't think we demonstrated actual fraud," and "I do not believe I'm going to be able to demonstrate fraud itself." Rather than contending that the judgment of dismissal was obtained by fraud, the

Clue *v.* Commissioner of Correction

The petitioner appealed to the Appellate Court, arguing that the habeas court had improperly limited the scope of its authority to open a judgment of dismissal after the passage of the four month limitation period in § 52-212a. See *Clue* v. *Commissioner of Correction*, supra, 223 Conn. App. 805. He also claimed that "ineffective assistance of habeas counsel is sufficient to invoke the [habeas] court's authority to grant a late motion to open a judgment." Id., 811–12. The Appellate Court agreed with the petitioner and concluded that the habeas court "improperly held that its authority to grant the petitioner's motion [to open] was limited [to] a showing that the judgment was obtained by fraud, duress, or a mutual mistake." (Internal quotation marks omitted.) Id., 819. The Appellate Court further concluded, "as a matter of first impression, that the ineffective assistance of habeas counsel under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is sufficient to invoke the [habeas] court's common-law authority to grant a late motion to open a judgment." (Footnote omitted.) *Clue* v. *Commissioner of Correction*, supra, 820–21.

We granted the respondent's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that, in the absence of fraud, duress or mistake, a habeas court has equitable authority, after the four month period set forth in . . . § 52-212a has elapsed, to open a judgment based on the ineffective assistance of habeas counsel?" *Clue* v. *Commissioner of Correction*, 348 Conn. 961, 312 A.3d 38 (2024).

On appeal, the respondent claims that the Appellate Court incorrectly interpreted § 52-212a "to include a common-law authority to open a final judgment beyond

petitioner's counsel agreed with the habeas court that "we're talking about an equitable exception based on ineffective assistance or lack of due diligence of counsel . . . ."

Clue *v.* Commissioner of Correction

the statutory deadline based on a showing of ineffective assistance of habeas counsel.'' Specifically, the respondent contends that, because the legislature has enacted numerous statutes outlining the scope of the writ of habeas corpus, the Appellate Court's ''decision usurps the legislature's regulation of the habeas field.'' It creates a mechanism independent of the ''habeas on habeas'' procedure that the legislature intended, the respondent argues, by opening the door to motions to open final habeas judgments, rather than requiring that a petitioner file a new habeas petition. The respondent contends that the Appellate Court arrived at this ''unchanneled right'' by misinterpreting the phrase ''[u]nless otherwise provided by law'' in § 52-212a to include claims of ineffective assistance of habeas counsel as a common-law exception to the four month period to file a motion to open a judgment.

The petitioner agrees with the Appellate Court that ineffective assistance of habeas counsel is a proper basis to open a habeas judgment. Specifically, he contends that the respondent underestimates the common-law authority of trial courts and notes that the courts have the inherent authority to open, correct, or modify judgments. The petitioner emphasizes that it is a well settled judicial policy preference to bring about a trial on the merits of a dispute whenever possible and argues that the respondent's interpretation of the phrase ''[u]nless otherwise provided by law'' in § 52-212a would deprive the petitioner of his day in court. The petitioner points to the ''equitable directive'' in General Statutes § 52-470 (a) and the importance of the right to counsel in General Statutes § 51-296 (a) as support for the Appellate Court's decision that the ineffective assistance of habeas counsel serves as a basis to open a judgment beyond the statutory deadline in habeas matters.

''[W]hether the trial court had authority to [exercise its discretion to open the judgment] under the circum-

Clue *v.* Commissioner of Correction

stances of this case . . . presents a question of law over which we exercise plenary review." (Citation omitted.) *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 166, 75 A.3d 651 (2013). This question, in turn, depends on whether the phrase "[u]nless otherwise provided by law" in § 52-212a includes claims of ineffective assistance of habeas counsel as a common-law exception to the four month period to file a motion to open a judgment. This is a question of statutory interpretation over which we exercise plenary review. See, e.g., *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 83, 282 A.3d 1253 (2022). Accordingly, we review § 52-212a pursuant to General Statutes § 1-2z and our familiar principles of statutory interpretation. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

It is well established that "[h]abeas corpus is a civil proceeding." *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). Consequently, "[a] habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions." (Internal quotation marks omitted.) *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 45, 130 A.3d 268 (2015). A motion to open and set aside a judgment in a civil case is governed by § 52-212a and Practice Book § 17-4. See, e.g., *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 563, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 980 (2016). As a consequence, our analysis begins with the statutory text. Section 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which the notice of judgment or decree was sent. . . ." We have

Clue *v.* Commissioner of Correction

explained that, outside of the habeas context, the purpose of § 52-212a is "to protect the finality of judgments." *Kim* v. *Magnotta*, 249 Conn. 94, 102, 733 A.2d 809 (1999); see also, e.g., *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, 190 Conn. 707, 713, 462 A.2d 1037 (1983) ("[t]he theory underlying [the] rules governing the vacating of judgments is the equitable principle that once a judgment is rendered it is to be considered final . . . and should be left undisturbed by [posttrial] motions except for a good and compelling reason" (citations omitted)). Consistent with this legislative purpose, we have characterized the four month period "as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it." *Kim* v. *Magnotta*, supra, 104. This is because § 52-212a permits waiver of the four month limitation period, and parties may not waive subject matter jurisdiction. Id., 101; see General Statutes § 52-212a ("[t]he parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court"); see also, e.g., *State* v. *Tabone*, 301 Conn. 708, 714, 23 A.3d 689 (2011) ("[t]he subject matter jurisdiction requirement may not be waived by any party" (internal quotation marks omitted)).

The four month statutory deadline is not, however, absolute. We have previously explained that, "[u]nder [§ 52-212a], [a] trial court is authorized to open a judgment more than four months after it was rendered when any one of the following four exceptions is satisfied: the parties waived the four month limitation; the parties otherwise submitted to the court's jurisdiction; the court's authority to open the judgment is otherwise authorized by law; or the court has continuing jurisdiction over the judgment. . . . In addition to these statutory exceptions, the trial court also may open a judgment if the judgment is shown to have been the product of fraud, mutual mistake, or absence of con-

Clue *v.* Commissioner of Correction

sent.''[3] (Citation omitted.) *Reinke* v. *Sing*, 328 Conn. 376, 390–91, 179 A.3d 769 (2018); see also, e.g., *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980).

Here, the habeas court sent notice of the dismissal of the underlying habeas petition on February 11, 2021, and the petitioner filed his motion to open the judgment of dismissal fifteen months later, on May 18, 2022, well beyond the four month statutory deadline. There is no dispute that the respondent did not consent to the opening of the judgment or otherwise submit to the court's jurisdiction and that the petitioner failed to prove fraud, duress, or mutual mistake. The parties agree that the question, then, is whether the statutory phrase "[u]nless otherwise provided by law" in § 52-212a authorizes a habeas court to open a judgment due to allegations of ineffective assistance of habeas counsel.

The Appellate Court has previously interpreted the "[u]nless otherwise provided by law" phrase "as preserving the common-law authority of a [trial] court to open a judgment after the four month period." (Internal quotation marks omitted.) *Simmons* v. *Weiss*, 176 Conn. App. 94, 99, 168 A.3d 617 (2017). In addition, this court has recognized that the "[u]nless otherwise provided by law" provision in § 52-212a references the established common-law exceptions that existed when the legislature codified the four month limitation on opening judgments. See, e.g., *Connecticut National Bank* v. *Cooper*, 232 Conn. 405, 413–14, 656 A.2d 215 (1995); *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 466, 440 A.2d 159 (1981). "The [common-law] exceptions to § 52-212a that authorize a trial court to open a judgment when the four month period has expired are fraud, duress,

---

[3] "Prior to the enactment of § 52-212a and [Practice Book § 17-4], both of which became effective in 1978, the common-law rule limited the court's power to open a judgment to the term of court at which the original judgment was rendered." *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 706 n.12, 894 A.2d 259 (2006).

Clue *v.* Commissioner of Correction

and mutual mistake.'' *Simmons* v. *Weiss*, supra, 100; see also, e.g., *In re Baby Girl B.*, 224 Conn. 263, 283, 618 A.2d 1 (1992) (''[c]ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment obtained by fraud, duress or mutual mistake''). Recently, we have explained that, ''to prevail on a motion to open filed outside [the four month deadline of § 52-212a], a movant must establish that the judgment was obtained by fraud, duress or mutual mistake or, under certain circumstances, [that] newly discovered evidence exists to challenge the judgment . . . .'' (Internal quotation marks omitted.) *Mercedes-Benz Financial* v. *1188 Stratford Avenue, LLC*, 348 Conn. 796, 805, 312 A.3d 16 (2024).

This court, however, has also more broadly characterized the ''[u]nless otherwise provided by law'' provision, explaining that it may refer to situations in which (1) ''the legislature has provided the trial court with the statutory authority to modify its previous judgment even after the four month period,'' (2) ''the common law has provided the trial court with continuing jurisdiction,'' or (3) ''a judgment rendered by the court may be opened even after the four month limitation if it is shown that the judgment was obtained by fraud, in the actual absence of consent, or because of mutual mistake.''[4] *O'Leary* v. *Industrial Park Corp.*, 211 Conn. 648, 652–53 n.2, 560 A.2d 968 (1989). But, even under this broader formulation of the relevant statutory language, we conclude that courts are not permitted to

[4] We agree with the Appellate Court in this case that ''[a] court may correct a clerical error at any time, even after the expiration of the four month period.'' (Internal quotation marks omitted.) *Clue* v. *Commissioner of Correction*, supra, 223 Conn. App. 816 n.8; see, e.g., *Judson* v. *Blanchard*, 3 Conn. 579, 587 (1821) (''[i]t would be disgraceful . . . to our judicial proceedings, if mere clerical mistakes, in matters of form, were not susceptible of a ready redress'' (internal quotation marks omitted)); see also, e.g., *Judson* v. *Blanchard*, supra, 586 (''the misprisions of clerks are amendable at any time''). Clerical errors are not at issue in this appeal.

Clue *v.* Commissioner of Correction

create a new common-law exception to the four month statutory deadline for the ineffective assistance of habeas counsel.[5] Indeed, neither this court nor the Appellate Court, until this case, has construed the "[u]nless otherwise provided by law" provision in § 52-212a to include the ineffective assistance of habeas counsel.

In construing this statutory provision, we do not write on a blank slate. The legislature has enacted a statutory scheme that governs many aspects of the writ of habeas corpus. See General Statutes §§ 52-466 through 52-470. Given that we must construe § 52-212a in light of its relationship to other statutes; see, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 45–46; we turn to our habeas statutory scheme. "[I]n 2012, the legislature amended § 52-470 with the goal of enacting comprehensive habeas reform." *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 434, 274 A.3d 85 (2022); see also Public Acts 2012, No. 12-115, § 1. "[T]he reforms were the product of collaboration and compromise by representatives [of] the various stakeholders in the habeas process, including the Division of Criminal Justice, the [OCPD], the criminal defense bar, and the Judicial Branch." (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 434. "The 2012 [habeas] amendments are significant not because they effectuate an entirely new purpose, but because they *provide tools* to effectuate the original purpose of ensuring expedient resolution of habeas cases." (Emphasis added.) *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 717, 189 A.3d 578 (2018).

The statutes governing habeas actions require that the petitioner be in custody for the conviction he is

[5] With respect to other statutes, we have interpreted the phrase "otherwise provided by law" to refer to legislation, not case law. See, e.g., *Spears* v. *Garcia*, 263 Conn. 22, 29, 818 A.2d 37 (2003) ("[t]he presence of the savings clause, 'except as otherwise provided by law,' pertains only to state and federal statutes, not to the common law").

Clue *v.* Commissioner of Correction

challenging at the time of filing a writ of habeas corpus. See General Statutes § 52-466 (a). We have explained that the way a petitioner may vindicate his statutory right to competent counsel in a habeas proceeding, pursuant to § 51-296 (a), is via a successive habeas petition, also known as a "habeas on a habeas." See, e.g., *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 550–51, 560–63, 570, 153 A.3d 1233 (2017) (applying reasoning from *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), to conclude that third habeas petition is available remedy for claim of ineffective assistance of habeas counsel in second habeas proceeding). The legislature has also contemplated successive habeas petitions, insofar as it has enacted legislation recognizing that, with only narrow exceptions, there is a presumption against good cause for delay for successive habeas petitions, including claims for ineffective assistance of counsel, that are filed more than two years after final judgment was rendered on the prior habeas petition. See General Statutes § 52-470 (d) and (e). In addition, the legislature has also designated statutory "procedures by which [a] habeas court may dismiss meritless petitions and untimely ones"; *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 717; and has articulated a standard for habeas courts to use in assessing whether the presumption against good cause for delay has been rebutted. See General Statutes § 52-470 (e). Finally, the legislature has determined that "[t]he time periods set forth in [§ 52-470 (d)] shall not be tolled during the pendency of any other petition challenging the same conviction." General Statutes § 52-470 (d). None of these provisions permits the opening of a habeas judgment outside the four month deadline based on the ineffective assistance of habeas counsel.

"[T]he legislature is always presumed to have created a harmonious and consistent body of law"; (internal quotation marks omitted) *Hartford/Windsor Health-*

Clue *v.* Commissioner of Correction

*care Properties, LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56 (2010); and we must construe legislation found in separate statutes harmoniously whenever possible. Permitting the opening of a habeas judgment outside of the four month time frame provided by § 52-212a, in instances of ineffective assistance of habeas counsel, would undermine the legislature's habeas statutory scheme. We agree with the respondent that such an interpretation creates a mechanism independent of the legislatively intended "habeas on a habeas." It would authorize motions to open final habeas judgments on the ground that ineffective assistance led to a delay in filing the motion to open, or led to the prior judgment itself. See *Kaddah* v. *Commissioner of Correction*, supra, 324 Conn. 563 ("the third habeas petition . . . is brought to vindicate the petitioner's right to counsel in the second habeas petition," and "[the] second habeas remedy . . . extends to ineffective assistance of counsel claims involving appellate counsel in [the first] habeas [appeal]" (internal quotation marks omitted)). Such an interpretation would require a full *Strickland*[6] hearing on any assertion that a delay in moving to open a judgment resulted from the ineffective assistance of counsel, in order to enable the habeas court to determine whether to open the judgment. See, e.g., *State* v. *Crespo*, 246 Conn. 665, 687–88, 718 A.2d 925 (1998) ("a claim of ineffective assistance of counsel must be raised by way of habeas corpus . . . because of the need for a full evidentiary record for such [a]

---

[6] "Under *Strickland*, [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 264, 112 A.3d 1 (2015).

Clue *v.* Commissioner of Correction

claim'' (internal quotation marks omitted)), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). This would undermine the legislature's goal of ensuring expedient resolution of habeas cases. ''It is well established that we presume the legislature's awareness of the common and statutory law governing the fields in which it acts. . . . We are especially confident as to this awareness with respect to habeas law in particular, as . . . the 2012 habeas reforms . . . were the product of collaboration and compromise by representatives [of] the various stakeholders in the habeas process . . . .'' (Citations omitted.) *Kaddah* v. *Commissioner of Correction*, supra, 567. We decline to upset the carefully crafted habeas procedures adopted by the legislature with input from all interested parties, especially given that the legislature was aware of § 52-212a when it passed the 2012 habeas reform legislation.[7]

Permitting, consistent with the petitioner's contention and the Appellate Court's decision, the opening of a judgment beyond the statutory four month deadline based on ineffective assistance of habeas counsel would, in many cases, bypass the legislative requirement that a petitioner be in custody when he files a habeas petition. See General Statutes § 52-466 (a). On its face, the Appellate Court's decision would allow petitioners who have already been released from custody to revive an old habeas petition. Indeed, in the present case, the petitioner had already been released from custody and deported when he filed his underlying motion to open. The Appellate Court reasoned, however, that the importance of the writ ''is not lost'' when there is a reasonable

_____

[7] Had the legislature intended to vest courts with continuing authority to create new common-law exceptions to the four month deadline, it would have done so explicitly. See, e.g., *State* v. *Joseph V.*, 345 Conn. 516, 545, 285 A.3d 1018 (2022) (recognizing ''well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so'' (internal quotation marks omitted)).

Clue *v.* Commissioner of Correction

possibility of prejudicial collateral consequences. *Clue* v. *Commissioner of Correction*, supra, 223 Conn. App. 822 n.15. But this runs contrary to the well settled principle that, "[f]rom the time the writ [of habeas corpus] originated in seventeenth century England, its central purpose has been to *test the legality of detention. . . .* Questions [that] do not concern *the lawfulness of the detention* cannot properly be reviewed on habeas corpus." (Citation omitted; emphasis added; internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 649–50, 224 A.3d 147 (2020). As such, the legislature has limited the use of the writ of habeas corpus as a remedy for ineffective assistance of habeas counsel to petitioners who are in custody when they file their petition, regardless of the collateral consequences after release, because the writ's core purpose is ending unjust custody. See, e.g., *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 540, 911 A.2d 712 (2006) ("once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual in custody for the purposes of a habeas attack [on] it" (internal quotation marks omitted)).

Relevant to the present case, we have acknowledged that deportation as a collateral consequence of a conviction, "although severe, [is] insufficient to render the petitioner in custody [for that conviction] and, therefore, to invoke the jurisdiction of the habeas court." Id., 541. Collateral consequences may keep a pending habeas action, filed while the petitioner was in custody, from becoming moot; see, e.g., *State* v. *Jerzy G.*, 326 Conn. 206, 214–24, 162 A.3d 692 (2017); but they do not overcome the jurisdictional requirement of present custody for filing a new habeas action for the ineffective assistance of habeas counsel. See, e.g., *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 540–41. Moreover, from a practical perspective, permitting a

Clue *v.* Commissioner of Correction

petitioner who is no longer in custody to prevail on a motion to open a judgment dismissing a habeas petition would enable him to "jump the line" of pending habeas cases in which petitioners are in custody. Cf. *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 562, 223 A.3d 368 (2020) ("[t]he rules of practice governing habeas corpus proceedings . . . clearly evince an order of operations, providing for procedures and motions in the sequence in which they generally occur in a typical habeas case" (citation omitted)).

Given the myriad conflicts that would arise between the legislative habeas scheme and an interpretation of § 52-212a that permits the opening of a judgment beyond the four month statutory deadline based on the ineffective assistance of habeas counsel, we cannot conclude that the legislature intended the phrase "[u]nless otherwise provided by law" in § 52-212a to constitute a judicial circumvention of the legislature's own habeas statutory scheme. Such a construction would run afoul of the notion that a statute must not be interpreted in a way that is inconsistent with a "legislative . . . scheme specifically designed to govern the particular conduct" at issue. *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002); see also, e.g., *Doe* v. *Doe*, 244 Conn. 403, 428, 710 A.2d 1297 (1998) ("we read related statutes to form a consistent, rational whole, rather than to create irrational distinctions"). In short, we construe § 52-212a in a manner that is consistent with, rather than in conflict with, our habeas statutory scheme. See, e.g., *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 149, 998 A.2d 730 (2010) ("[i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them" (internal quotation marks omitted)).

Clue *v.* Commissioner of Correction

There is an additional reason that counsels against the petitioner's interpretation of the statute. Although this case arises from a habeas action, "[§ 52-212a] applies without limitation to any civil judgment or decree rendered in the superior court . . . ." (Internal quotation marks omitted.) *In re Baby Girl B.*, supra, 224 Conn. 283. Consequently, if we were to construe the "[u]nless otherwise provided by law" provision in § 52-212a to include claims of ineffective assistance of counsel, there would be no meaningful way to cabin that construction to the habeas context, and, therefore, it would be applicable to all civil cases. Accordingly, we conclude that the "[u]nless otherwise provided by law" provision in § 52-212a does not include a new judicially created common-law exception for the ineffective assistance of habeas counsel.

The petitioner nevertheless contends that it is a "well settled policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) As a result, he argues, "[c]ourts should disfavor the termination of proceedings without a determination of the merits of the controversy . . . ." (Internal quotation marks omitted.) The petitioner claims that, if we construe § 52-212a as the respondent advocates, the petitioner will not have his day in court. That may be true, but our statutory scheme compels this result. The petitioner filed his motion to open beyond the four month statutory deadline, and he failed to establish that the judgment was obtained by fraud, duress, mutual mistake, or that there is a statutory provision under which the habeas court would have the authority to open the judgment. He also had already been released from custody at the time he filed the motion. Although the petitioner may be disappointed with the position he finds himself in, the legislature has determined that, with limited exceptions, no civil

Clue *v.* Commissioner of Correction

judgment may be opened "unless a motion to open . . . is filed within four months following the date on which the notice of judgment or decree was sent." General Statutes § 52-212a. In the area of habeas corpus, the avenue for pursuing an ineffective assistance of habeas counsel claim is a successive habeas petition. See General Statutes § 51-296 (a); see also, e.g., *Kaddah* v. *Commissioner of Correction*, supra, 324 Conn. 559–63.

The petitioner also contends that our decision in *Kim* v. *Magnotta*, supra, 249 Conn. 109, supports the proposition that a trial court's authority to open a judgment is not exclusively limited to cases in which the judgment is shown to have been the product of fraud, duress, or mutual mistake. The petitioner correctly notes that, in *Kim*, we concluded that, even after the expiration of the four month period in § 52-212a, a trial court has the authority to set aside a stipulated judgment that resulted from a violation of the Connecticut Unfair Trade Practices Act (CUTPA) on a basis other than fraud, duress, or mutual mistake. See id., 96–97 and n.3. We disagree that this lends support for the petitioner's contention that claims of ineffective assistance of habeas counsel fall within the "[u]nless otherwise provided by law" provision of § 52-212a. We concluded in *Kim* that the "discretionary equitable authority" conferred on a trial court by General Statutes § 42-110g (a), a provision of CUTPA, "falls within the 'otherwise provided by law' provision of § 52-212a . . . ."[8] Id., 107–109. But this is

_____

[8] It is true that, in *Kim*, this court concluded that "the discretionary equitable authority to provide a remedy for CUTPA violations," pursuant to § 42-110g, fell within the "[u]nless otherwise provided by law" provision in § 52-212a. *Kim* v. *Magnotta*, supra, 249 Conn. 107. We note, however, that this court also concluded that "§ 52-212a does not permit a person who has committed *fraud* to rely on a stipulated judgment to shelter gains that were acquired improperly. . . . It is hard to fathom why a person who has committed an unfair trade practice should be treated differently." (Citation omitted; emphasis added.) Id., 109. As we already explained, it is well settled that fraud constitutes an exception to the four month statutory deadline in § 52-212a. See, e.g., *O'Leary* v. *Industrial Park Corp.*, supra, 211 Conn. 653 n.2.

Clue *v.* Commissioner of Correction

a legislatively enacted provision, not a common-law rule. In other words, *Kim* stands for the proposition that a remedy created by the legislature, in the case of *Kim*, for violations of CUTPA, is "otherwise provided by law" for purposes of the late opening or setting aside of a judgment under § 52-212a. There is no such legislative provision in the present case, and the Appellate Court's analysis does not suggest otherwise; rather, the Appellate Court specified that it had created a new common-law ground that was "otherwise provided by law" to justify opening the judgment dismissing the petitioner's habeas petition. See *Clue* v. *Commissioner of Correction*, supra, 223 Conn. App. 813, 820–21.

Finally, the petitioner contends that *Kaddah* supports his position that this court can develop a common-law exception to the four month deadline in § 52-212a. As support for his position, he points to this court's statement that, "in the absence of a statute curtailing the common-law right to the writ [of habeas corpus], any modifications that we make to its availability to vindicate legal rights are a function of [this court's] ultimate authority over the state's common law." *Kaddah* v. *Commissioner of Correction*, supra, 324 Conn. 564 n.14. We disagree with the petitioner that *Kaddah* provides support for his construction of § 52-212a. In *Kaddah*, we interpreted the habeas statutory scheme as permitting third habeas petitions to vindicate the statutory right to counsel in a second habeas proceeding. See id., 563. We recognized that, "[a]lthough the writ of habeas corpus has a long common-law history, the legislature has enacted numerous statutes shaping its use, such as . . . § 52-466, which governs the litigation of the writ as a civil matter." (Footnote omitted.) Id., 565–66. We emphasized that permitting a third habeas action did not conflict with the "restrictive measures by which the courts may check abusive or frivolous habeas petitions" or with the "numerous statutes shaping" the use

353 Conn. 97 AUGUST, 2025 119

Clue *v.* Commissioner of Correction

of the writ of habeas corpus. (Internal quotation marks omitted.) Id., 564–65. The court also found it significant that the legislature adopted the procedure for third habeas actions, given that the legislature was aware of the use of successive habeas petitions, such as third habeas petitions, and that, in the 2012 habeas reforms, it adopted rules regulating the adjudication of successive habeas petitions. See id., 566–68. Unlike in *Kaddah*, however, in the present case, there is no indication of legislative approval of the petitioner's construction of the statute, and, as we explained, the petitioner's interpretation of § 52-212a would circumvent, and conflict with, the habeas statutory scheme. In other words, the petitioner would have us interpret a statute of general civil applicability to create an exception for habeas petitioners that is inconsistent both with the application of that statute to all other civil litigants and with statutes governing habeas petitioners. We decline to do so.[9]

In sum, we conclude that the "[u]nless otherwise provided by law" provision in § 52-212a cannot be construed so broadly as to include a new judicially created common-law exception for the ineffective assistance of habeas counsel. Accordingly, the Appellate Court erroneously reversed the habeas court's denial of the petitioner's untimely motion to open the judgment of

---

[9] The petitioner also cites our recent decision in *Rose* v. *Commissioner of Correction*, 348 Conn. 333, 304 A.3d 431 (2023), as support for his construction of § 52-212a. In *Rose*, we concluded that "ineffective assistance of counsel is an external, objective factor that may constitute good cause to excuse the delayed filing of a habeas petition under § 52-470 (c) and (e) . . . ." Id., 349. This conclusion does not advance the petitioner's argument. *Rose* is distinguishable from the present case because *Rose* involved a "good cause" exception to a time limitation statute enacted by the legislature specifically for habeas proceedings. Id., 342–43. Here, the petitioner asks us to interpret a statute of general civil applicability to provide a ground for opening a habeas judgment that is unavailable in other civil actions and that conflicts with our habeas statutory scheme. In short, our holding in *Rose* addressed, and was consistent with, the overarching scheme for the filing and disposition of new habeas petitions, whereas the petitioner's construction of § 52-212a would conflict with this scheme.

Clue *v.* Commissioner of Correction

dismissal, based on this newly created common-law exception to § 52-212a.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the decision of the habeas court denying the petitioner's motion to open the judgment of dismissal.

In this opinion MULLINS, C. J., and D'AURIA, ALEX-ANDER and DANNEHY, Js., concurred.

ECKER, J., dissenting. For the reasons cogently explained in the Appellate Court's well reasoned opinion, I conclude that the habeas court had the equitable authority to grant the untimely motion to open and set aside the dismissal of the habeas petition filed by the petitioner, Lascelles A. Clue, on the basis of the allegedly ineffective assistance of the petitioner's habeas counsel. See *Clue* v. *Commissioner of Correction*, 223 Conn. App. 803, 805, 819–20, 309 A.3d 1239 (2024). "[I]n the present case, barring relief from a judgment that was rendered or not timely opened due to the ineffective assistance of habeas counsel on the sole basis that the [four month] statutory period [in General Statutes § 52-212a] has expired would undermine 'the fundamental fairness origins underlying the common-law writ of habeas corpus' and 'the very nature of the statutory right [to habeas counsel] provided by [General Statutes] § 51-296 (a).' " Id., 825, quoting *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 563, 153 A.3d 1233 (2017). Moreover, "a rigid rule that, in the absence of proof of fraud, duress, or mutual mistake, the negligence of habeas counsel that rises to the level of constitutional[ly] deficient performance is not a valid basis to open a judgment also would be unduly harsh and, therefore, contrary to general principles of equity." *Clue* v. *Commissioner of Correction*, supra, 831. Because the constitutional, statutory, and common-law rules

Clue *v.* Commissioner of Correction

governing the writ of habeas corpus, otherwise known as the great writ, are distinct from those applicable to other civil actions, "unlike attorney negligence in the traditional civil context, ineffective assistance of counsel is sufficient to invoke the court's equitable authority to open a habeas judgment more than four months after it was rendered." Id.; see, e.g., *Rose* v. *Commissioner of Correction*, 348 Conn. 333, 348, 304 A.3d 431 (2023) ("[a]lthough a petitioner is bound by his counsel's inadvertence, ignorance, or tactical missteps, regardless of whether counsel is flouting procedural rules or hedging against strategic risks, a petitioner is not bound by the ineffective assistance of his counsel" (internal quotation marks omitted)); *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 555, 223 A.3d 368 (2020) (discussing "the ancient origin and protean nature of the great writ" (internal quotation marks omitted)); *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 142 n.11, 712 A.2d 947 (1998) (recognizing "the common-law principle that the doctrines of res judicata and collateral estoppel, claim preclusion and issue preclusion, respectively, are ordinarily inapplicable in the habeas corpus context" because "[c]onventional notions of finality of litigation have no place [when] life or liberty is at stake and the infringement of constitutional rights is alleged" (internal quotation marks omitted)).

I would affirm the judgment of the Appellate Court reversing the judgment of the habeas court and remanding the case for a new hearing on the petitioner's motion to open the judgment, and, therefore, I respectfully dissent.